81 Cal.App.2d 76 (1947)
Estate of MARY RYERSON BUTIN, Deceased. A. E. CHRISTIANA et al., as Executors, etc., Appellants,
v.
VERA V. RYERSON, Respondent.
Civ. No. 7381. 
California Court of Appeals. Third Dist. 
July 28, 1947.
 Mason A. Bailey, David E. Peckinpah and L. N. Barber for Appellants.
 W. M. Conley, Philip Conley and Matthew Conley for Respondent.
 THOMPSON, J.
 The executors of the estate of Mary Ryerson Butin, deceased, have appealed from two separate orders of partial distribution to Vera V. Ryerson, a niece of the decedent and a legatee under the will. The first order, dated February 28, 1946, distributed to the niece the sum of $12,000. The second order, dated May 11, 1946, distributed to the niece, as residuary legatee, real and personal property, reserving sufficient funds with which to close the administration of the estate, and a sum, "not to exceed" $35,000, for the construction of a monument "to the memory of all those who ... strove to make Madera and Madera County all that it is."
 The executors contend that the will of the deceased created a charitable trust of the entire residue of the estate; that the will directed the executors to erect a monument for the purpose indicated, which will cost much more than the residue left in the estate; that the orders are not supported by the evidence, and that the distribution of said properties is in violation of the trust, excessive and void.
 The appeals involve the necessity of construing the will to determine whether a valid charitable trust was thereby created to construct the monument, and, if so, whether the reasonable cost thereof would exceed the reserved sum of $35,000.
 Mary Ryerson Butin died testate March 30, 1944, in Madera County, where she had lived and practiced her profession *79 as a physician for many years. She was possessed of real and personal property of the appraised value of $75,074.61. The will was admitted to probate and Judge Stanley Murray and A. E. Christiana were appointed and qualified as executors thereof. The will provides in part that:
 "First: I direct that all my lawful debts and funeral expenses be paid as soon after my demise as can be legally and conveniently done."
 "Second: I give, devise and bequeath to my niece, Vera V. Ryerson of Omaha, Nebraska, all that certain real property in the City of Madera, County of Madera, State of California, and particularly described as follows:"
 "Lot five (5) in Block five (5) of the Town, now City of Madera, ..."
 together with all the furnishings in said house including clothing and jewelry, and whatever may be upon said property. including an automobile, if I have one.
 "Third: I direct that my executors, hereinafter named, erect in the courthouse park at Madera, California, a granite tower, constructed of Raymond granite, to contain a carillon of eighteen bells. Said tower and bells to be placed in the park at a reasonable cost. I request an inscription in sand blast letters to be cut in a conspicuous place upon the granite composing the tower to read as follows:"
 " 'Dedicated to the memory of all those who during the years between 1891 and 19___ strove to make Madera and Madera County all that it is."
 John L. Butin, M.D.
 Mary Ryerson Butin, M.D.'
 "If said tower cannot be erected in the courthouse park, I then request my executors to erect it in some other suitable place. I realize that future conditions are very uncertain, and if, for any good reason, it is impractical to erect this type of memorial, my executors are then authorized to use their own discretion as to the type of memorial to be erected and the cost thereof. It is my intention that my executors shall freely exercise their own good judgment in all things set forth in this third paragraph."
 "Fourth: All the residue of my property, both real and personal, I give, devise, and bequeath to my niece, Vera V. Ryerson." *80
 No other legacies, devises or bequests were provided for in the will. It specifically states that testatrix purposely has made no provision for any other person, and that any person who contests the will or any provision thereof, shall be given the sum of $1.00 in lieu of whatever share of the estate such person might otherwise take.
 The executors petitioned to distribute to Vera V. Ryerson, in accordance with the second paragraph of the will, Lot five, Block five in Madera, together with the household goods, clothing and jewelry contained in the dwelling house thereon, and one automobile. That petition was granted, and, on December 14, 1944, the court made its decree distributing that property, which was specifically enumerated therein, to Vera V. Ryerson. That decree is not involved on these appeals.
 Upon petition of the niece and legatee, Vera V. Ryerson, for partial distribution, to which objections were filed by the executors, it appearing that all claims presented against the estate, amounting to $659.93, have been paid, it was ordered that the petitioner be paid the sum of $12,000, and that the hearing of said petition be continued for further evidence. Upon the further hearing of that petition oral and documentary evidence was adduced, from which the court determined that "the memorial provided for in the third paragraph of her will should be constructed at a reasonable cost; that the reasonable cost of the memorial should not exceed the sum of $35,000.00." The court then declared that it was necessary to retain in the estate the sum of $32,800.57, cash on hand, and certain specified bonds, with which to pay the costs of closing the estate and the cost of constructing the monument. The balance of the real and personal property, specifically enumerated, was thereupon ordered to be distributed to petitioner. It was provided that distribution of the real and personal property last mentioned should be "deemed to include the said sum of $12,000.00," previously ordered to be paid.
 From both last-mentioned orders of partial distribution the executors have appealed. They claim that they are entitled to retain the entire residue of the estate with which to pay the necessary cost of erecting the monument in accordance with the designated purpose of the charitable trust contained in the will. The respondent has not appealed from the orders of partial distribution. She does not contend that the bequest *81 for the construction of a monument is void or uncertain. In fact, she concedes that it is valid, and asserts that:
 "The interpretation and construction of the will made by the trial court is reasonable and consistent with the intention of the testatrix."
 The respondent does raise the question as to whether the bequest for the construction of a monument creates a charitable trust, but asserts that the amount thus expended shall be limited, under section 41 of the Probate Code, to the value of one-third of the estate of the testatrix.
 From the evidence adduced at the hearing for partial distribution, it appeared that it was impractical to construct the memorial with the carillon of bells, on the courthouse park in Madera, for the reasons that a site for the tower to be located on county property could not be procured, that it would interfere with the public business conducted in the courthouse, and that it would cost more than $100,000, which is in excess of the value of the entire estate.
 [1a] The bequest in the will authorizing the executors to erect at Madera a "granite tower, ... to contain a carillon of eighteen bells, ... at a reasonable cost, ... 'Dedicated to the memory of all those who ... strove to make Madera and Madera County all that it is,' " constitutes a valid public charitable gift. (Estate of Henderson, 17 Cal.2d 853 [112 P.2d 605]; Estate of Coleman, 167 Cal. 212 [138 P. 992, Ann.Cas. 1915C 682]; Society of California Pioneers v. McElroy, 63 Cal.App.2d 332 [146 P.2d 962]; 5 Cal.Jur. 2, 1; 14 C.J.S. 443, 14; 10 Am.Jur. 621, 52.) [2] The fact that the proposed charity may be intended as a private memorial does not affect its public character or its validity. (Estate of Coleman, supra; 10 Am.Jur. 624, 54.) Bequests for the promotion of public, religious, educational or moral welfare, by the construction of buildings, monuments or fountains, have been held to be charitable in their nature. In the present case, the charitable bequest was evidently intended to create respect for the benefactors of Madera County and also for the benefit of the general public. [3] The language of the charitable bequest should receive a liberal construction in accordance with the intention of the testator. (14 C.J.S. 437, 11.) [4] It is true that the will must designate the purpose of the charitable bequest with reasonable certainty. (14 C.J.S. 453, 20.) But it is not necessary that a detailed *82 plan of execution shall be stated. [5] When the general nature of the trust is adequately designated, its execution may be delegated to the named trustees, subject to the approval of court. (Russell v. Allen, 107 U.S. 163 [2 S.Ct. 327, 27 L.Ed. 397]; 14 C.J.S. 436, 7.)
 [6] The will provides in this case that "if, for any good reason, it is impractical to erect this type of memorial, my executors are then authorized to use their own discretion as to the type of memorial to be erected." The foregoing provision gives the executors discretion, in the event that it is impractical to erect the tower with bells, to determine some other "type of monument" in accord with the same designated purpose. The alternative provision does not change the purpose for which the tower or memorial was to be constructed. It is a proper authorization to the trustees to exercise their discretion. We think the provision is valid, and that it merely permits the type or character of monument to be changed, in case of necessity, without interfering with the purpose for which it was to be constructed. That alternative provision authorizes the substitution of some other appropriate monument which will carry out the same purpose expressed by the testatrix since the erecting of the tower with a carillon of bells is impractical, as the court has found it to be, even though the memorial may consist of a building to be used as a "health center," such as was proposed by the executors for the approval of the court.
 The bequest for a charitable use is limited, as against certain designated heirs, including nieces, under section 41 of the Probate Code, to one-third of the value of the estate of the testatrix. That section provides in part that:
 "If [the will was] so executed at least thirty days before death, such devises and legacies shall be valid, but they may not collectively exceed one-third of the testator's estate as against his spouse, brother, sister, nephew, niece, descendant or ancestor, who would otherwise have taken the excess over one-third."
 [7] Section 42 of the Probate Code is not applicable to the present case for the reason that the charitable bequest was not for the benefit of the county of Madera, as a municipal corporation. Under the substituted or alternative provision of the will, the tower or memorial could be located on property other than "the courthouse park at Madera." It was intended as a memorial for the benefit of the public at *83 large. It was to be "Dedicated to the memory of all those who ... strove to make Madera and Madera County all that it is." It is evident from the will that the memorial was not necessarily intended to become the property of the county. Certainly the expressed purpose of the memorial was not confined to the sole benefit of the county as a subdivision of the state. Section 42, therefore, may not be construed to take the bequest out of the inhibitions of section 41 of the code.
 [8] In determining whether the bequest is charitable, the courts should ascertain from the language of the will, and from competent oral evidence to aid in its construction (Noice v. Schnell, 101 N.J.Eq. 252 [137 A. 582, 52 A.L.R. 965, 979]; 50 A.L.R. 593, note), the nature and purpose of the gift rather than the motive of the donor, the identity of the trustees, although it is not necessary to mention them as "trustee", and the beneficiaries who are to profit thereby. [9] If the bequest is for the benefit of the public or of "an indefinite number of persons in the legal sense" (14 C.J.S. 471, 37), it is immaterial that the donor may also benefit by his request that the inscription on the monument shall contain his name. (Estate of Coleman, supra; In re Graves' Estate, 242 Ill. 23 [89 N.E. 672, 134 Am.St.Rep. 302, 17 Ann.Cas. 137, 24 L.R.A. N.S. 283]; 14 C.J.S. 440, 12, and page 471, 37.) In the authority last cited, it is said at page 440 that:
 "In determining whether a gift is charitable, the courts look to the nature and purpose of the gift, rather than to the donor's motives in making it; and hence, where the nature of the gift is such that it must be deemed to be for a public purpose, the fact that there is also a private motive in making it does not deprive the gift of its public character so as to render it noncharitable. It is immaterial whether or not the purpose is called charitable in the gift itself if it is so described as to show that it is charitable in its nature."
 [10] The will in the present case sufficiently designates the executors named therein as trustees. It specifically declares that "I direct that my executors, hereinafter named, erect ... a granite tower," etc. Clearly the named executors were designated to act for that purpose, which constitutes them trustees. [11] When the will makes it clear who are authorized to act in administering the charitable bequest, it becomes immaterial that they are not specifically designated *84 as such "trustees." The nature of the services they are directed to perform determines their relationship. (14 C.J.S. 458, 25; In re McArdle's Will, 147 Misc. 876 [264 N.Y.S. 764].)
 In 2 Restatement of the Law of Trusts, page 1193, section 397 e., it is said:
 "If the owner of property devises or bequeaths it upon trust for a charitable purpose, the intended charitable trust is not invalid because of his failure to name a trustee. In such a case the court will appoint a trustee if no method of selecting the trustee is provided for in the terms of the trust, and if the testator did not manifest an intention that his executor should also be trustee." (Italics added.)
 In the last-cited authority, at page 1194, section 397 f., it is said:
 "... The executor of the will will be permitted to act as trustee if the testator manifested an intention that he should so act."
 In this case the testatrix designated her named executors to administer the trust. That designation is sufficient and valid.
 In re Graves' Estate, supra, a bequest of a testator merely authorized "my executors" to erect a drinking fountain "on the north side of Fifty-fifth street boulevard," in Chicago, in memory of "Ike Cook," a famous racehorse, and directed that the inscription thereon should contain "my name as the person erecting said monument, the name of said horse, and the time or record of speed said horse made." The court determined that the bequest was for a charitable purpose.
 [1b] Monuments or memorial structures which have been erected in public places to beautify parks or public buildings, to commemorate historical events or prominent citizens for the benefit of the general public, as distinguished from private monuments in memory of the donor or his immediate relatives, have uniformly been held to be charitable in their nature. We think the bequest in the present case falls within that class of memorial gifts, and that it is charitable in its nature, in spite of the fact that the names of the donor and her deceased husband were to be inscribed on the monument. It was evidently intended primarily to inspire honor and respect for those citizens who had devoted a share of their time, talent and resources to the public welfare of Madera County. *85 It is not unreasonable to assume that the monument was intended also to stimulate other public-spirited persons to similarly serve the public. The beneficiaries of that charitable bequest are chiefly the public. It was therefore a charitable bequest.
 [12] The doctrine of cy pres appears to be applicable to the charitable bequest in this case, since the monument is for a public charitable use as distinguished from a private trust, and the construction of the specific type of tower with a carillon of bells and its location in the courthouse park are impractical. (Society of California Pioneers v. McElroy, supra; In re Peterson's Estate, 202 Minn. 31 [277 N.W. 529, 533]; 2 Bogert's Trusts and Trustees, 1307, 436; 2 Restatement of the Law of Trusts, 1208, 399.)
 In the text last cited it is said:
 "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor. ..."
 "d. ... If the application made by the trustees is such as the court would have directed, the court may approve the application, and such approval will be as effective as though the court had authorized the application before it was made."
 In this case the testatrix specifically authorized the alternative application of the charitable bequest, and the court approved the substitution of a different type of memorial to conform to the general purpose designated by the donor. When the type of that substituted memorial is determined by the trustees, it should be approved by the court, together with the cost of construction within the limitations herein prescribed, which may not exceed one-third of the value of the estate of the testatrix. The monument in question has not been constructed. The court merely determined that a sum not to exceed $35,000 should be expended for that purpose. It is directed that when the probate court is petitioned to approve the type and cost of the memorial constructed pursuant to what we have previously said in that respect, it first ascertain the value of the estate, and allow not more than one-third thereof for the cost of the memorial. *86
 As so modified, the orders for partial distribution are affirmed. The respondent may recover her costs on appeal.
 Adams, P. J., and Peek, J., concurred.